# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2646

_____

Gary Cox; Jill Cox,                                  *
                                                     *
                    Appellants,                      *
                                                     *
         v.                                          *    Appeal from the United States
                                                     *    District Court for the District of
Mortgage Electronic Registration                     *    Minnesota.
Systems, Inc.; Aurora Loan Services,                 *
Inc.,                                                *
                                                     *
                    Appellees.                       *

_____

Submitted:  March 15, 2012
Filed:  July 12, 2012

_____

Before MURPHY, BRIGHT, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Gary and Jill Cox ("homeowners") filed this lawsuit in Minnesota state court against Mortgage Electronic Registration Systems, Inc. and Aurora Loan Services, Inc. (collectively "lender") seeking legal and equitable relief from the lender's foreclosure and sale of their home. The lender removed the case to federal court, invoking jurisdiction under 28 U.S.C. § 1332, and subsequently moved to dismiss the complaint for failure to state a claim upon which relief can be granted or alternatively

for summary judgment. The district court[1] dismissed the suit, and the homeowners appeal. We affirm.

## I.     BACKGROUND

In January 2004, the homeowners obtained $472,500 for a home purchase through a mortgage agreement with the lender. In February 2009, the homeowners were experiencing financial hardship and contacted the lender to explore potential financial accommodations. They subsequently applied to the lender for a loan modification pursuant to the United States Department of the Treasury's Home Affordable Mortgage Program ("HAMP"). In September 2009, the lender notified the homeowners that they "potentially qualified for a modification" and would be put on a trial modification plan with monthly payments of $2,779.38 to demonstrate their capacity to make the payments if the loan was permanently modified. The homeowners submitted the trial payments in October, November, and December. On December 28, 2009, Terry Martin, one of the lender's employees, "instructed [the homeowners] to discontinue payment pursuant to the Trial Payment Plan, as [they] had already demonstrated [their] ability to make payments pursuant to the modification, and could expect to receive notice of the modification approval shortly." In reliance on Martin's statements, the homeowners discontinued making their trial payments and awaited notification of a permanent modification.

On February 4, 2010, the lender denied the homeowners' modification application because the ratio of the loan to the home value was too high. The denial letter informed the homeowners that "[i]f you do not bring your loan current immediately, any foreclosure action will resume from the point at which it was suspended without further notice." The letter also stated that the homeowners "may

<hr>

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

be eligible for other alternatives to foreclosure." On March 8, 2010, the lender informed the homeowners that they "may not be eligible" for a HAMP modification but that the loan had been placed in a thirty-day review period. The lender also stated that the homeowners should continue to make monthly payments under the trial plan, that they would "continue to be eligible for HAMP consideration," and that they would "receive an additional written communication of the status of [the] modification" at the end of the thirty-day review period. On March 24, 2010, before the end of the thirty-day review period, the lender served the homeowners with notice of a foreclosure sale, which indicated that the homeowners needed to pay $31,846.30 to "bring your mortgage up to date." The lender purchased the property at the foreclosure sale on October 4, 2010, for $511,941.78.

On November 4, 2010, the homeowners initiated the present lawsuit and attached the February 4 letter, the March 8 letter, and the March 24 foreclosure notice to the complaint. In Count I, the homeowners sought "a detailed accounting of [the lender's] activities relating to [the homeowners'] request for a forbearance or loan modification." The homeowners next alleged four counts under which they sought to recover damages. In Count II, they alleged that the lender violated a duty of good faith and fair dealing imposed by Minnesota Statute section 580.11. In Count III, the homeowners alleged that the lender breached the implied duty of good faith and fair dealing arising from their mortgage agreement. In Counts IV and V, respectively, the homeowners alleged fraudulent and negligent misrepresentation. Finally, in Count VI, the homeowners requested injunctive relief staying the foreclosure proceedings. Upon the lender's motion, the district court dismissed the suit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because "[the homeowners'] claims are entirely based on the loan modification request under HAMP" and HAMP creates no private right of action. The district court also held in the alternative that the homeowners did not plead plausible claims under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The homeowners appeal, contending that HAMP does not preempt

their state-law claims and that they pled the claims with sufficient particularity to state a claim.

## II.    DISCUSSION

We review *de novo* the district court's grant of a motion to dismiss under Rule 12(b)(6).  *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  We make this determination by considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint."  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

The parties agree that Minnesota law governs our analysis of the homeowners' state-law claims.  *See Kaufmann v. Siemens Med. Solutions USA, Inc.*, 638 F.3d 840, 843 (8th Cir. 2011).  We review *de novo* the district court's interpretation of Minnesota law, *Triton Corp. v. Hardrives, Inc.*, 85 F.3d 343, 345 (8th Cir. 1996), and, unless the outcome of the case is dictated by Minnesota Supreme Court precedent, we "must attempt to predict what that court would decide if it were to address the issue," *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011).

### A.    Count I:  Accounting

In Count I, the homeowners requested "a detailed accounting of [the lender's] activities relating to [the homeowners'] request for a forbearance or loan

modification, including . . . an Order releasing the entire contents of [the homeowners'] loan file from [the lender's] custody." The district court dismissed Count I, concluding that an accounting is an extraordinary equitable remedy that is unwarranted here because there is an adequate remedy available at law through normal discovery requests. We agree that the information the homeowners seek is available through discovery if they can plead any valid claim, and the existence of this legal remedy renders an accounting unwarranted. *See Border State Bank, N.A. v. AgCountry Farm Credit Servs., FLCA*, 535 F.3d 779, 784 (8th Cir. 2008) (holding that the extraordinary equitable remedy of an accounting was not justified because the plaintiff did not explain why it could not obtain the necessary information through discovery). Furthermore, the homeowners' reliance on *Vernon J. Rockler & Co. v. Glickman, Isenberg, Lurie & Co.*, 273 N.W.2d 647 (Minn. 1978), is unavailing because that case involved a professional malpractice claim against an accounting firm, not the equitable remedy of accounting requested here. Because the homeowners have not explained why discovery is not an adequate remedy, the district court did not err in dismissing Count I.

### B.      Count II: Violation of Section 580.11

Minnesota's foreclosure-by-advertisement statute provides that the sheriff or sheriff's deputy sell the premises foreclosed upon to the highest bidder at a public venue. Minn. Stat. § 580.06, subdiv 1. The statute specifically authorizes "[t]he mortgagee, the mortgagee's assignee, or the legal representative of either or both [to purchase the premises] fairly and in good faith" at the sale. Minn. Stat. § 580.11. The district court dismissed Count II, concluding that any duty imposed under section 580.11 applies only to the fairness of the purchase itself and that the homeowners did not allege that the lender acted unfairly or in bad faith in purchasing the home at the foreclosure sale. The homeowners do not contend on appeal that the lender acted unfairly or in bad faith in making the purchase itself, but they contend that the lender violated a duty imposed under section 580.11 by acting unfairly and

-5-

in bad faith "while foreclosing." The homeowners contend that the lender breached this duty by first informing them that it would work with them to "resolve [their] minor deficiency on the Mortgage," and then later failing to respond to status requests and refusing to release their loan file. The homeowners also contend that the lender breached this duty by stating that they would have a permanent modification if they made the trial payments.

Section 580.11 imposes on a mortgagee a "duty to act 'fairly and in good faith' when it purchase[s] the property at the foreclosure sale." *Sprague Nat'l Bank v. Dotty*, 415 N.W.2d 725, 726-27 (Minn. App. 1987). The homeowners cite no persuasive authority establishing that section 580.11 imposes a general fiduciary duty on foreclosing lenders beyond conduct that has a material impact on the fairness of the foreclosure sale itself. "When the language of a statute is plain and unambiguous, it is assumed to manifest legislative intent and must be given effect." *Beardsley v. Garcia*, 753 N.W.2d 735, 737 (Minn. 2008) (quoting *Burkstrand v. Burkstrand*, 632 N.W.2d 206, 210 (Minn. 2001)). For example, in *Sprague*, the Minnesota Court of Appeals held that a loan guarantor had raised a jury question as to the mortgagee's bad faith in obtaining a low purchase price at the foreclosure sale because the mortgagee first discouraged the guarantor from bidding at the sale by telling him that it would not bid lower than the balance owed on the loan and then bid significantly lower than the loan balance without informing the guarantor of the change in plans. 415 N.W.2d at 727. *Sprague*'s application of section 580.11 is consistent with the section's plain language, which simply authorizes the mortgagee to purchase the premises at the foreclosure sale so long as the lender's actions relating to the sale itself are fair and taken in good faith.

The homeowners argue that the Minnesota Court of Appeals spoke generally of the "fiduciary duty as a mortgagee to act fairly and to deal in good faith with the mortgagor *when foreclosing*" while citing section 580.11 and *Sprague* in an

unpublished opinion.  *See Resolution Trust Corp. v. River Props. of St. Paul Ltd. P'ship.*, No. C7-94-2547, 1995 WL 295963, at \*4 (Minn. Ct. App. May 16, 1995) (unpublished) (emphasis added).  However, *Resolution Trust* addressed whether a party "breached this duty by failing to hold a foreclosure sale of the property in a timely manner," and ultimately held that the sale was timely and that no breach occurred.  *Id.*  Furthermore, the court rejected the argument that section 580.11 imposed a duty on the mortgagee to enforce a court order against a guarantor requiring the guarantor to make payments on the mortgage.  *Id.*  Although the mortgagee "had the right to enforce the order," the mortgagee was under no legal obligation to do so.  *Id.*  Because the court refused to require the foreclosing lender to take an action that was in the best interest of the mortgagor—an action unrelated to the fairness of the foreclosure sale—*Resolution Trust* cannot be read reasonably as imposing a general fiduciary duty on foreclosing lenders for conduct that has no material impact on the fairness of the foreclosure sale itself.[2]

Having concluded that the lender's obligation under section 580.11 does not reach conduct that has no material impact on the fairness of the sale itself, we must now consider whether the homeowners' complaint states a claim for relief under the statute.  Here, the homeowners pled only that the lender said it would work with them to resolve their loan delinquency, failed to respond to their status requests on these efforts, and refused to give them its files regarding the loan modification.  Because

---

[2]The homeowners also rely on Minnesota Statute section 58.13, which details standards of conduct for mortgage originators and service-providers, but they do not explain how these standards of conduct expand the duties imposed on mortgagees in section 580.11 beyond the fairness of the foreclosure-sale purchase itself. Furthermore, the district court refused to address this argument because the homeowners did not plead a cause of action under section 58.13 in the complaint. The homeowners do not contend on appeal that they pled any cause of action in the complaint arising under section 58.13.

the homeowners allege no connection between these actions and the fairness of the foreclosure sale itself, we affirm the dismissal of Count II.

### C. Count III: Breach of the Duty of Good Faith and Fair Dealing

The district court dismissed Count III because the homeowners did not assert an independent breach of contract claim, relying on the proposition that "a cause of action for good faith and fair dealing cannot exist independent of the underlying breach of contract claim." *Orthomet, Inc. v. A.B. Med., Inc.*, 990 F.2d 387, 392 (8th Cir. 1993). To be sure, "a cause of action for good faith and fair dealing cannot exist independent of the underlying breach of contract claim" in the sense that an enforceable contract must exist before the duty of good faith and fair dealing can be implied by law into it. *See id.* at 392 (holding that, because the underlying breach of contract claim was barred by the statute of frauds, no breach of an implied covenant of good faith and fair dealing can survive independently); *Minnwest Bank Cent. v. Flagship Props. LLC*, 689 N.W.2d 295, 303 (Minn. Ct. App. 2004) (holding that a bank's refusal to grant long-term financing did not violate the duty of good faith and fair dealing because the bank had no contractual duty to grant long-term financing and because it did not unjustifiably frustrate the plaintiff's performance under the contract). However, a plaintiff alleging a claim for breach of the implied covenant of good faith and fair dealing "need not first establish an express breach of contract claim—indeed, a claim for breach of an implied covenant of good faith and fair dealing implicitly assumes the parties did not expressly articulate the covenant allegedly breached." *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 503 (Minn. 1995). Plaintiffs need not allege a breach of an express duty under a contract so long as the claims are "based on the underlying . . . agreements" because the implied covenant of good faith and fair dealing extends to actions within the scope of the underlying enforceable contract. *See id.* Here, the homeowners' claims that the lender engaged in an "abuse of power" under the mortgage agreement and "unjustifiably hindered" them from performing under the mortgage agreement are

based on the parties' mortgage agreement. The parties do not contest the enforceability of that agreement. Thus, the district court erred in dismissing the homeowners' claim for breach of the duty of good faith based on the homeowners' failure to assert an independent breach of an express contractual duty.

Nevertheless, dismissal of Count III was proper because the homeowners failed to plead adequately a claim for breach of the duty of good faith and fair dealing. The homeowners contend that the lender abused its power under the mortgage agreement by informing the homeowners that it "would work with [them] to provide a mortgage modification" and by then failing to respond to their repeated requests for status updates on the modification and refusing to release the homeowners' loan file. It may be true that a party's "abuse of a power to specify terms" in an existing contract violates the duty of good faith and fair dealing. *See* Restatement (Second) Contracts § 205, cmt. d; *Hennepin Cnty.*, 540 N.W.2d at 502 (citing Restatement (Second) Contracts § 205). However, the homeowners have failed to identify any term of the mortgage agreement that the lender had power to specify and for which it abused this power. We thus reject this argument.

The homeowners also contend that the lender breached the duty of good faith and fair dealing by unjustifiably hindering their performance under the mortgage agreement. Minnesota law provides that "contract performance is excused when it is hindered or rendered impossible by the other party." *Zobel & Dahl Constr. v. Crotty,* 356 N.W.2d 42, 45 (Minn. 1984). Furthermore, "a breach of contract occurs under those circumstances." *Id.* However, "[t]he implied covenant of good faith and fair dealing does not limit [a party's] right to act in accordance with the bargained-for terms of the agreement." *Burnette Techno-Metrics, Inc. v. TSI Inc.*, 44 F.3d 641, 643 (8th Cir. 1994). "In contrast, the implied covenant of good faith and fair dealing governs the parties' performance and prohibits a party from failing to perform for the purpose of thwarting the other party's rights under the contract." *Team Nursing*

*Servs., Inc. v. Evangelical Lutheran Good Samaritan Soc'y*, 433 F.3d 637, 641-42 (8th Cir. 2006). Examples of breach of the duty of good faith and fair dealing by unjustified hindrance include wrongfully repudiating a contract, *Wormsbecker v. Donovan Constr. Co. of Minn.*, 76 N.W.2d 643, 650 (Minn. 1956), "avoid[ing] performance by affirmatively blocking the happening of a condition precedent," *Hennepin Cnty.*, 540 N.W.2d at 501, refusing to allow a party to perform unless the performing party waived other contractual rights, *Zobel*, 356 N.W.2d at 45-46, and using a party's rejection of an offer as a defense to contract liability when the defendant persuaded the party to reject the offer in the first place, *Nodland v. Chirpich*, 240 N.W.2d 513, 516-17 (Minn. 1976).

In this case, the homeowners did not adequately plead a claim for breach of the duty of good faith and fair dealing by unjustified hindrance. With respect to the lender's alleged failure to respond to status requests on the loan modification and refusal to release the loan file, the homeowners alleged that they suffered damages, but they never alleged that the lender's actions prevented them from performing their responsibilities under the mortgage agreement, thereby causing their damages. Minnesota law requires a claim for breach of the duty of good faith and fair dealing to allege "a causal link between the alleged breach and the party's claimed damages." *LaSociete Generale Immobiliere v. Minneapolis Cmty. Dev. Agency*, 44 F.3d 629, 638 (8th Cir. 1994). Because the homeowners pled no connection between the lender's failure to respond to their status requests or refusal to release the loan file and the homeowners' failure to perform under the mortgage agreement, thereby causing their damages, they did not adequately plead a cause of action for breach of the duty of good faith and fair dealing based on these actions.

With respect to the lender's instruction to discontinue payments and its requests that the homeowners submit documents that they had already submitted, the homeowners similarly failed to adequately plead a causal connection between the

lender's actions and their damages. The homeowners did not plead plausible factual allegations indicating that they would have been able to pay the mortgage absent their reliance on the instructions. *Cf. Zobel*, 356 N.W.2d at 46 (affirming verdict of breach by unjustified hindrance where "[t]he builders at all times were willing to make the repairs on the punch list," but the defendant "unreasonably prevented [them] from completing construction"). The homeowners allege that they were current on their mortgage payments in February 2009 but make no such allegation of currency as of September 2009, when the trial program began. The homeowners allege that they made the first three $2,779.38 trial payments from October through December 2009, when the lender instructed them to stop payments. Yet, according to the foreclosure notice attached to the complaint, the homeowners owed almost $32,000 on the mortgage on March 19, 2010. Thus, most of the delinquency must have arisen before the homeowners even entered the trial plan. Moreover, the homeowners did not plead that they began making payments again after the March 8 letter instructed them to do so. On the face of the complaint, it is not plausible that the homeowners were in a position to settle the nearly $32,000 delinquency and avoid foreclosure but for the instruction to stop payments in December 2009. Because the homeowners failed to plead a plausible causal relationship between the lender's actions and the homeowners' damages, they have failed to state a claim for unjustified hindrance. *See LaSociete Generale*, 44 F.3d at 638. We affirm the dismissal of Count III.

### D.    Counts IV and V: Fraudulent and Negligent Misrepresentation

"To succeed in a fraudulent misrepresentation claim under Minnesota law, a plaintiff must prove '(1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance

thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.'" *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) (quoting *Hoyt Props., Inc. v. Prod. Res. Grp., LLC*, 736 N.W.2d 313, 318 (Minn. 2007)) (alteration in original). "The elements of a negligent misrepresentation claim differ from fraudulent misrepresentation only with respect to the required state of mind . . . [in that] a plaintiff must show that the defendant 'supplie[d] false information for the guidance of others in their business transactions' and in doing so 'fail[ed] to exercise reasonable care or competence in obtaining or communicating the information.'" *Id.* (quoting *Florenzano v. Olson*, 387 N.W.2d 168, 174 n.3 (Minn. 1986)). "Under Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation, is considered an allegation of fraud which must be pled with particularity." *Id.* (citing *Juster Steel v. Carlson Co.*, 366 N.W.2d 616, 618 (Minn. Ct. App. 1985)). Thus, the homeowners must plead "the time, place, and contents" of the false representations, the identity of the individual who made the representations, and what was obtained thereby, to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007).

The homeowners alleged that the lender (1) falsely told them via Martin's statement that they should cease making payments under the trial plan and (2) falsely stated in the March 8 letter that the loan had been placed in a thirty-day review period. The district court held that the homeowners failed to adequately plead that they relied on these misrepresentations and that this reliance caused their damages. The homeowners contend that they adequately pled reliance and causation because they alleged that they ceased making payments in reliance on the instructions, the modification was rejected less than a month later based on this failure to make the payments, and the lack of a modification played a central role in the foreclosure of the mortgage. They also contend that their "belief that the[] application for the mortgage modification was again under review and anticipat[ion of] word from the

lender at the close of the 30-day review period" constituted detrimental reliance because it occurred "as a result of [the lender's] March 8, 2010 letter."

The homeowners' misrepresentation claims fail because they again did not plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The homeowners provided only conclusory allegations that they relied on the lender's representations and were damaged "as a direct and proximate result" of that reliance. Although they allege that Martin's instructions caused them to discontinue payment and await word of modification approval, nowhere do the homeowners allege that "awaiting word" caused their inability to pay the mortgage delinquency. In fact, the attachments to the homeowners' complaint establish that they were informed on February 4 that they must bring their loan current immediately to avoid foreclosure and were further informed on March 8 that they must continue making the trial payments in excess of $2,700 per month. The homeowners make no allegation that the failure to make payments between December 28, 2009, and March 8, 2010, or the promise of a thirty-day review period was the actual and proximate cause of the ultimate foreclosure. Even assuming that the homeowners reasonably relied on the lender's instructions in failing to make their January and February payments, the February 4 letter instructed them to bring their loan current in order to avoid foreclosure, and the two missed payments were only a small fraction of the amount required to do so.[3] Furthermore, the lender also informed them on February 4 that it could not offer a modification because the ratio of the loan to the home value was too

---

[3]The homeowners contend that the district court erroneously considered evidence submitted by the lender that the lender informed the homeowners in January that they must continue making their trial payments and that the homeowners did in fact submit their trial payments for the months of January and February. Although the lender submitted this evidence into the record before the district court, we can find no indication that the district court relied on it. We similarly decide this case without relying on material outside the complaint and its attachments.

high. Because the homeowners' factual allegations do not support a reasonable inference that their reliance on the lender's statements caused the modification denial and the subsequent foreclosure, the homeowners have failed to state a claim based on Martin's statement. *See Iqbal*, 556 U.S. at 678. Similarly, the homeowners' allegation that they relied on the March 8 letter promising a thirty-day review period simply by "believing [they were] in a review period" provides no plausible connection between this belief and the modification denial and resulting foreclosure. The homeowners offer no explanation as to why delaying the foreclosure notice by fourteen days would have prevented the foreclosure.

The homeowners also contend that they adequately pled detrimental reliance based on other misrepresentations in that they alleged: (1) making three trial payments in reliance on a promise of a permanent modification; (2) providing documents requested by the lender for the modification application; and (3) complying with the lender's requests to submit and sign documents which the homeowners had already submitted and signed. However, the homeowners did not adequately plead that the foreclosure was caused by these actions. With respect to the trial payments, the homeowners admit that they were merely informed that they "potentially qualified for a modification" before being asked to make the trial payments, not that payment would ensure a permanent modification. With respect to document submission, the homeowners did not allege that the lender misrepresented which documents it had received or which documents were required for the application. The homeowners instead merely alleged that they provided all requested documents, including those that they had previously submitted. Thus, the homeowners' arguments regarding these alleged misrepresentations also fail to create a viable cause of action.

### E.    Count VI: Preliminary Injunction

The district court dismissed Count VI because it dismissed Counts II through V and therefore concluded that the impossibility of success on the merits of those claims made a preliminary injunction unwarranted. *See Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc) (listing the factors to be considered in a preliminary injunction analysis). The homeowners contend that the lender "offered no legal authority . . . that an independent cause of action loses legal significance and merit simply because other counts of a complaint are dismissed." However, the homeowners pled in Count VI that they had no adequate remedy at law for the "interference" with their property rights alleged in the previous Counts. Count VI thus depends on the viability of Counts II through V. Because Counts II through V were properly dismissed, Count VI was also properly dismissed.

### F.    Leave to Amend the Complaint

The homeowners argue for the first time in their reply brief that we should grant them leave to file a motion with the district court for leave to amend the complaint. This argument was perhaps foreshadowed by a heading located only in the table of contents of their opening brief, which otherwise contains no explanation of the argument or citation to relevant authority. The homeowners waived this issue by failing to provide a meaningful explanation of the argument and citation to relevant authority in their opening brief. *See United States v. Stanko*, 491 F.3d 408, 415 (8th Cir. 2007). Thus, we deny the homeowners' request to remand the case to the district court to allow them to move for leave to amend the complaint.

## III.  CONCLUSION

For the foregoing reasons, we affirm.[4]

_____

---

[4]While the district court's analysis of HAMP preemption in this case may be questionable, we need not address this issue because we find that the complaint fails to meet the *Twombly* pleading standards.