# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2272

_____

United States of America

*Plaintiff - Appellee*

v.

Daniel J. Richardson, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: April 15, 2020
Filed: September 3, 2020
[Unpublished]

_____

Before KELLY, WOLLMAN, and STRAS, Circuit Judges.

_____

PER CURIAM.

Daniel Richardson, Jr., who pleaded guilty to possessing unregistered firearm silencers, *see* 26 U.S.C. §§ 5845(a)(7), 5861(d), 5871, received a 60-month prison sentence. He argues that the district court[1] did not do a good enough job explaining

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

why it gave him a sentence above the recommended range of 18 to 24 months. He also claims that the sentence is substantively unreasonable. We affirm.

Richardson donated money to Red Cloud Indian School. He later learned, however, that it was run by the Jesuits. This development apparently upset him so much that he made a threatening YouTube video, which showed him holding a large, machete-like knife to the throat of a stuffed frog, and then sent it to one of the school's administrators. He declared that he was "coming up to clean house" and that he "[had] a sword" for anyone who "want[ed] to be a Jesuit."

Justifiably alarmed, school administrators notified law enforcement, which discovered more YouTube videos. In one, Richardson said that he had "plenty of weapons in [his] truck" and that he "does things this way, public and messy, [because] it's the only way [he] can."

His threats were more than just idle talk. He traveled approximately 1,000 miles from his home in Tennessee to South Dakota to visit the school. He packed his truck with a machete, a handgun, and a 5-foot-long Samurai sword. When he arrived at the school, an administrator went out to the parking lot to confront him, but soon saw his collection of weapons. Fortunately, an officer arrived on the scene and took him into custody. But a later search of his trailer, which he had parked at a South Dakota campsite, revealed that he also had two other handguns with unregistered silencers.

The government charged Richardson with several crimes, but he eventually pleaded guilty to possessing unregistered firearm silencers, *see* 26 U.S.C. §§ 5845(a)(7), 5861(d), 5871, in exchange for the dismissal of the remaining charges. The district court imposed a 60-month prison sentence, well above the 18 to 24 months recommended by the Sentencing Guidelines, through two alternative paths. One was an upward variance resting on the court's overall assessment of the

statutory sentencing factors. *See* 18 U.S.C. § 3553(a). The other was an upward departure "based on conduct . . . underlying" the dismissed charges. U.S.S.G. § 5K2.21.

Richardson's primary argument is that the district court did not adequately explain either path, particularly in light of the possibility that the videos contained protected speech.[2] During sentencing, the court mentioned the videos, but emphasized one in which he said that he was coming to South Dakota to "light up this candle." For us to have enough for "meaningful appellate review," *Gall v. United States*, 552 U.S. 38, 50 (2007), Richardson suggests that the district court needed to do more than just say that statements like this one were true "threats."

But the district court did say more—much more. In particular, it connected Richardson's statements to his *conduct*. It noted, for example, that the school administrator who first encountered him that day would have "see[n] [the] firearm . . . as a threat" after viewing "the YouTube video clips." The district court discussed a number of other facts too, including the large number of weapons he had and a post-arrest call he made to his wife telling "her not to respond and not to cooperate with law enforcement." In short, this explanation was more than sufficient to show that the court fully considered the statutory sentencing factors before varying upward, especially because the court was *not* required to "respond to every argument." *United States v. Black*, 670 F.3d 877, 881–82 (8th Cir. 2012); *see also*

---

[2]To the extent Richardson claims that the district court erred by considering the videos *at all*, he has two hurdles to overcome. He must both convince us that the videos were protected speech *and* that the court could not consider them if they were. *Cf. Dawson v. Delaware*, 503 U.S. 159, 165 (1992) ("[T]he Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment."). His briefs at least mention the first point, but they completely miss the second. In short, he has not done enough to meaningfully bring this issue before us on appeal. *See Waters v. Madson*, 921 F.3d 725, 744 (8th Cir. 2019); *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 674 (8th Cir. 2012).

*United States v. Timberlake*, 679 F.3d 1008, 1011–12 (8th Cir. 2012) (holding that any error in failing to adequately explain an upward departure was harmless because the court gave a sufficient explanation for an upward variance).

The sentence is also substantively reasonable. *See United States v. Feemster*, 572 F.3d 455, 461–62 (8th Cir. 2009) (en banc) (applying an abuse-of-discretion standard). The district court considered the statutory sentencing factors, as explained above, and determined that an upward variance was necessary to protect the public and to deter future criminal conduct. Although Richardson believes that the court should have given less attention to some factors (like his threatening and erratic behavior) and more to others (like his advanced age and lack of a criminal history), there is nothing to suggest that it exceeded its "wide latitude" in this area. *United States v. Abrica-Sanchez*, 808 F.3d 330, 335 (8th Cir. 2015) (quotation marks omitted).

We accordingly affirm the judgment of the district court.

_____