# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1875

_____

Far East Aluminium Works Co. Ltd.

*Plaintiff - Appellant*

v.

Viracon, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 21, 2021
Filed: March 9, 2022

_____

Before ERICKSON, GRASZ, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

This case serves as a reminder that contractual remedies can be limited, particularly when sophisticated commercial parties are involved. The issue here is whether a consequential-damages exclusion is enforceable in a contract for the sale of goods. The district court[1] concluded that it was, and we affirm.

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

## I.

Several years ago, Far East Aluminium bought some windows from Viracon Incorporated. These were no ordinary windows. The "lites," as they are called, change color in the sun because of a special coating, and only a handful of window manufacturers in the world make them. Far East chose Viracon because it could produce enough for the Wynn Palace, an opulent resort under construction in Macau.

The parties' contract was expensive in more ways than one. In addition to setting a steep purchase price, it shifted most of the risk to Far East. It stated in big, capital letters that "VIRACON SHALL NOT BE LIABLE UNDER ANY CIRCUMSTANCES FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES OF ANY KIND." And it "expressly disclaim[ed] any implied warrant[ies] of merchantability or fitness for any particular purpose." (Capitalization omitted). If a lite failed, the exclusive remedies were a "refund [of] the purchase price" or receiving a replacement "without charge," meaning that any additional repairs were Far East's responsibility.

At first, the lites performed as expected. Over time, however, they began to fail, and Far East's business suffered along with them. According to the complaint, the project's general contractor "demanded . . . additional payments of more than" $5.2 million "related to the replacement of [the] defective [lites]." And "removing [them]" and installing replacements has already cost Far East over $2.8 million.

Feeling the pinch, Far East sued Viracon for over $8 million in damages. The district court granted Viracon's motion to dismiss on the ground that the contract itself ruled out consequential damages as a remedy. *See* Fed. R. Civ. P. 12(b)(6).

II.

We review the grant of a motion to dismiss de novo. *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012). Like the district court, we must determine whether Far East's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Minnesota law governs our analysis in this diversity case. *See Cox,* 685 F.3d at 668.

The parties' briefing requires us to answer three questions. First, did the district court get it right when it held that Far East could not recover due to the contract's consequential-damages exclusion? If so, the second question is whether an exclusion like this one is conscionable? *See* Minn. Stat. § 336.2-719(3). And third, is it enforceable even if the sole remaining remedy "fail[s] of its essential purpose"? *Id*. § 336.2-719(2). The answer to all three questions is yes.

A.

First things first. Is Far East seeking consequential damages? According to the complaint, Far East is attempting to recover more than $8 million, all arising out of the removal and replacement of defective lites. If these damages are "INDIRECT, INCIDENTAL, [OR] CONSEQUENTIAL," then the parties' contract makes clear that "VIRACON SHALL NOT BE LIABLE" for them "UNDER ANY CIRCUMSTANCES."

Minnesota's version of the Uniform Commercial Code defines what types of damages are "consequential." Minn. Stat. § 336.2-715(2)(a)–(b). The first type "include[s] . . . any [unmitigated] loss[es] resulting from" a seller's failure to live up to "general or particular requirements" that the "seller at the time of contracting had reason to know." *Id*. § 336.2-715(2)(a). The second type is any "injury to person or

-3-

property proximately resulting from any breach of warranty." *Id*. § 336.2-715(2)(b). They are, for lack of a better word, "*the consequence* of special circumstances known to or reasonably supposed to have been contemplated by the parties when the contract was made." *Kleven v. Geigy Agric. Chems.*, 227 N.W.2d 566, 569 (Minn. 1975) (emphasis added) (quotation marks omitted). The prototypical example is a loss of profits from missing a delivery date. *See Hadley v. Baxendale*, 156 Eng. Rep. 145, 151 (1854).

Damages are direct, by contrast, when they "arise out of the breach itself." *Kleven*, 227 N.W.2d at 569; *accord* Minn. Stat. § 336.2-714(1)–(2) (noting that "[t]he measure of damages" from the breach itself "is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had . . . if they had been as warranted"). Had Viracon failed to follow through on its promise to deliver replacement lites or refund the purchase price, then the direct damages would have consisted of anything expected to follow "in the usual course" after the breach. *Despatch Oven Co. v. Rauenhorst*, 40 N.W.2d 73, 79 (Minn. 1949) (noting that direct damages are those "resulting in the usual course of things from a breach of warranty"). One example would be the cost of getting replacement lites.

What is going on here is different. Viracon never promised to remove defective lites, install new ones, or pay Far East's business partners. So like a loss of profits from a late delivery, the relief requested here is for the sort of additional, foreseeable losses that arise out of the contract's "particular requirements," Minn. Stat. § 336.2-715(2)(a), which brings them squarely within Minnesota's definition of consequential damages. *See Despatch Oven Co.*, 40 N.W.2d at 79; *see also N. States Power Co. v. ITT Meyer Indus.*, 777 F.2d 405, 408–413 (8th Cir. 1985) (holding that "replacement and removal costs" were "consequential damages" under Minnesota law).

B.

Unfortunately for Far East, the contract is clear that Viracon is not liable for consequential damages. Although Far East has two reasons why it believes that the consequential-damages exclusion is unenforceable, neither is persuasive.

1.

The first reason is that Far East views the contract as so one-sided that it is "unconscionable." *Osgood v. Medical, Inc.*, 415 N.W.2d 896, 901 (Minn. Ct. App. 1987) (describing the unconscionability doctrine). Although the Minnesota Supreme Court has yet to work out the details of what makes a contract unconscionable, it is clear that the doctrine does not apply here. *See Int'l Fin. Servs., Inc. v. Franz*, 534 N.W.2d 261, 269–70 (Minn. 1995).

When "two merchants of relatively equal bargaining power" agree to "allocate[] the risk of loss" in a contract, it is not the court's job to shift the risk elsewhere. *Id.* at 268–69. So even if one of the parties later becomes unhappy with the terms of the arrangement, "[t]he consequential[-]damages exclusion is [still] valid and enforceable." *Id.*; *see also Transp. Corp. of Am. v. Int'l Bus. Machines Corp.*, 30 F.3d 953, 960 (8th Cir. 1994) (applying Minnesota law and concluding that a consequential-damages exclusion was "conscionable as a matter of law").

2.

Not to be deterred, Far East also argues that the cost of replacing the lites is so high that the remedy in the contract—refund or replacement—is not much of a remedy at all and "fail[s] of its essential purpose." Minn. Stat. § 336.2-719(2). The question for us is whether the alleged failure of the contract's exclusive remedy has any effect on the enforceability of the consequential-damages exclusion.

The answer is no, and once again, *Franz* is the reason why. The merchant there made the same argument that Far East makes here: "the failure of the exclusive remedy" invalidated a consequential-damages exclusion. *See Franz*, 534 N.W.2d at 267. After reviewing a split of authority on the question, the Minnesota Supreme Court chose a side. In merchant-to-merchant transactions, when the "warranted item" is "highly complex [and] sophisticated," the validity of a consequential-damages exclusion is "discrete and independent" from the sufficiency of the remedy specified in the contract. *Id.* at 268, 269. So even if the refund-or-replace remedy in the parties' contract "fail[s] of its essential purpose," Minn. Stat. § 336.2-719(2), the consequential-damages exclusion is still "valid and enforceable," *Franz*, 534 N.W.2d at 269.

## C.

To the extent Far East's indemnity claim survives the consequential-damages exclusion, it fails for another reason. To "recover indemnity" for the money demanded by the project's general contractor, Far East had to show that an "express contract" obligated Viracon "to reimburse [it] for [the] liability of the character involved." *Hendrickson v. Minn. Power & Light Co.*, 104 N.W.2d 843, 848 (Minn. 1960).

Language of this kind is missing from the parties' contract. The only right to reimbursement is for "the purchase price of the glass," and even then, only if Viracon "elects [not] to replace the defective [lites]." Any other costs, "including, but not limited to, removal of the defective unit[s], installation of replacement units, [and] any labor, materials, and/or any other damages," are Far East's responsibility. Rather than "containing an explicit undertaking to reimburse" Far East for these

-6-

expenses, *id*., the contract does everything imaginable to shield Viracon from any further liability.[2]

## III.

One loose end remains. The district court did not allow Far East to amend its complaint before dismissing the case with prejudice. We conclude that it did not abuse its discretion. *See Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1068 (8th Cir. 2004).

Although litigants are "freely give[n] leave" to amend pleadings, *see* Fed. R. Civ. P. 15(a)(2), they still have to "follow [the] proper procedures," *Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014). One requirement, which is specified in a local rule, is to "submit [a] proposed amendment along with [the] motion." *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985); *see* D. Minn. R. 15.1(b) ("Any motion to amend a pleading must be accompanied by . . . a copy of the proposed amended pleading.").

Far East has never submitted an amended complaint at all, much less presented one along with a motion. D. Minn. R. 15.1(b). A failure to do so, as we have concluded before, is reason enough to deny leave to amend. *See In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884–85 (8th Cir. 2009) (holding that "[the] district court properly denied a plaintiff leave to amend because she 'did not submit a motion for leave to amend' . . . and 'did not offer a proposed amended

---

[2]Far East's contribution claim fails for an even simpler reason: it has waived it. *See Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived."); *Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004) ("Since there was no meaningful argument on this claim in [Far East's] opening brief, it is waived.").

complaint or even the substance of [a] proposed amendment to the district court'" (quoting *Clayton*, 778 F.2d at 460)).  Our conclusion is the same here.

IV.

We accordingly affirm the judgment of the district court.

_____