# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3399

_____

Raul De La Rosa

*Plaintiff - Appellee*

v.

Trooper Mark White

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: October 25, 2016
Filed: March 27, 2017

_____

Before RILEY, Chief Judge,[1] BEAM and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

In March 2012, Nebraska state trooper Mark White stopped a Ford Ranger pickup truck on Interstate 80 in Seward County, Nebraska for following another

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

vehicle too closely. See Neb. Rev. Stat. § 60-6, 140(1). After the driver, Raul De La Rosa, provided his Arizona license, Trooper White issued a warning and completed the traffic stop in less than fifteen minutes. However, when De La Rosa refused to consent to a search of the pickup, Trooper White called for a drug detection dog and detained De La Rosa for fifty minutes before the dog arrived from Omaha. The dog alerted to De La Rosa's vehicle; an interior search uncovered a small amount of marijuana and three concealed firearms. De La Rosa was arrested and charged in state court with carrying concealed firearms. The charges were dismissed after the state trial court granted De La Rosa's motion to suppress the firearms.

De La Rosa then filed this 42 U.S.C. § 1983 damage action in state court, alleging that Trooper White unconstitutionally initiated a traffic stop and questioned, detained, and arrested De La Rosa without reasonable suspicion or probable cause. White removed the case to the United States District Court for the District of Nebraska and now appeals the district court's denial of his motion for summary judgment based on qualified immunity. "An interlocutory order denying qualified immunity is immediately appealable to the extent that it turns on an issue of law." Aaron v. Shelley, 624 F.3d 882, 883 (8th Cir. 2010) (quotations omitted). Reviewing the denial of qualified immunity *de novo*, we reverse. See New v. Denver, 787 F.3d 895, 899 (8th Cir. 2015) (standard of review).

## I.

**A.** Qualified immunity shields government officials from civil damage liability for discretionary action that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is an immunity from suit, not a mere defense to liability. The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quotation omitted). To avoid pretrial dismissal,

a plaintiff must present facts showing the violation of a constitutional right that was clearly established at the time of the defendant's act. Id. at 232-33, 236.

**B.** The Fourth Amendment prohibits unreasonable searches and seizures. A traffic stop is constitutionally reasonable "where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 809-10 (1996). A traffic stop may include inquiries incident to determining whether to issue a citation, and limited unrelated inquiries such as checking to determine if the vehicle occupants are wanted for prior offenses. See Rodriguez v. United States, 135 S. Ct. 1609, 1614-15 (2015). However, extending the detention beyond the time needed to complete the traffic-ticketing process is unlawful unless additional investigation, such as a dog sniff of the vehicle's exterior, is warranted by the officer's reasonable suspicion that other criminal activity may be afoot. See Rodriguez, 135 S. Ct. at 1616; United States v. Sokolow, 490 U.S. 1, 7 (1989). In this case, the district court granted Trooper White summary judgment "to the extent that De La Rosa is claiming a constitutional violation based on the initial stop." De La Rosa does not challenge that ruling on appeal. Thus, the only issue before us is whether Trooper White is entitled to qualified immunity from the claim that he lacked reasonable suspicion warranting a fifty-minute extension of the traffic stop while he summoned a drug dog that alerted to De La Rosa's pickup.

**C.** Reasonable suspicion is a fact-specific determination: a reviewing court must "look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002) (quotations omitted). Reasonable suspicion requires that the officer possess at least "some minimal level of objective justification." Sokolow, 490 U.S. at 7 (quotation omitted). Thus, courts must not uphold "virtually random seizures" based on "circumstances [that] describe a very large category of presumably innocent travelers." Reid v. Georgia, 448 U.S. 438, 441 (1980). But in making determinations of probable cause

and reasonable suspicion, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." Sokolow, 490 U.S. at 10 (quotation omitted).

## II.

In this case, after initiating the traffic stop, Trooper White observed a spare tire in the bed of the pickup truck, obtained De La Rosa's Arizona driver's license, and asked De La Rosa about his travels and employment. De La Rosa said he was traveling from Phoenix, Arizona to visit family or friends in Peoria, Illinois. Though unemployed, De La Rosa said he performed "odd jobs" in Arizona to finance the trip. Trooper White asked if De La Rosa had "been in trouble in the past with drugs, guns, or anything else." De La Rosa said no. Lincoln Dispatch advised that De La Rosa had a criminal history for destruction of property in 2005. Questioned further, De La Rosa explained that the charges were dropped, an explanation confirmed in the report dispatched to White's computer.[2] Trooper White issued a warning ticket, returned De La Rosa's documentation, and told him that he was "free to go." As De La Rosa exited the patrol car, White asked whether he had drugs or anything in the vehicle that shouldn't be there. De La Rosa said no. White asked for consent to search the vehicle; De La Rosa refused. White then told De La Rosa he was calling a drug detection canine unit to conduct an exterior sniff of the vehicle.

In denying Trooper White qualified immunity, the district court considered the uncontroverted facts in White's statement of undisputed material facts, supplemented by facts in De La Rosa's affidavit and exhibits that provided "little additional substance." The court properly recognized that an officer needs reasonable suspicion

---

[2]Trooper White averred that he did not notice that part of the report during the traffic stop. De La Rosa asserts that claim is "hard to believe and unsupported in the record" but does not argue this is a genuine issue of disputed material fact.

to detain the motorist after completing a traffic stop, an inquiry based on the totality of the circumstances known to the officer at the time. The court then identified the following facts as the basis for Trooper White's suspicion of criminal activity:

> De La Rosa allegedly lied about having a criminal history because he said he had not "been in trouble with guns, drugs, or anything else" but he had been charged, in 2005, with destruction of property.
>
> De La Rosa said he was going from Phoenix to visit friends in Illinois; according to White, Arizona is a source state for contraband and Illinois is a destination site.
>
> De La Rosa had a spare tire in the bed of his pickup truck, which White found "interesting" because it was not in a storage area under the bed of the truck, and sometimes contraband is transported in a spare tire.
>
> De La Rosa stated that he was unemployed and had earned money for his trip by working odd jobs, which to White "sounded like a cover story."
>
> De La Rosa's demeanor was "extremely laid back and relaxed," to the point that Trooper White felt like De La Rosa was being deceptive or "stand offish." According to White, people that he contacts are usually conversational during the stop, but De La Rosa was "closed off" and non-conversational.

After carefully assessing each of these factors at length, the court concluded that "the circumstances identified here, whether viewed individually or in combination, do not generate reasonable suspicion for De La Rosa's continued detention." The court denied Trooper White qualified immunity because two Eighth Circuit decisions, United States v. Jones, 269 F.3d 919 (8th Cir. 2001) and United States v. Beck, 140 F.3d 1129 (8th Cir. 1998), while not "factually identical," are "sufficiently on point to have placed that constitutional question 'beyond debate' for purposes of qualified immunity." Focusing exclusively on whether Trooper White

violated clearly established law in concluding that he had reasonable suspicion to detain De La Rosa until the drug dog arrived, we disagree.

## III.

To be clearly established for qualified immunity purposes, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (citations and quotations omitted). Absent a case that is controlling authority in our jurisdiction, we look for "a robust consensus of cases of persuasive authority." Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011) (quotation omitted).

In the Fourth Amendment context, the Supreme Court has "recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [has] indicated that in such cases those officials . . . should not be held personally liable." Anderson, 483 U.S. at 641. Some years later, the Court further explained: "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances . . . . Yet, even if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, Anderson still operates to grant officers immunity for reasonable mistakes as to the legality of their actions." Saucier v. Katz, 533 U.S. 194, 206 (2001). The same analysis applies when, as in this case, the Fourth Amendment issue is whether an officer had reasonable suspicion justifying a warrantless investigative detention, rather than

-6-

probable cause to arrest or search.  Thus, Trooper White is entitled to qualified immunity if a reasonable officer could have believed that he had a reasonable suspicion; in other words, if he had arguable reasonable suspicion.  See New, 787 F.3d. at 899 (applying "arguable probable cause" standard in qualified immunity case); Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000).

In this case, we find no controlling Eighth Circuit authority placing the question beyond debate, nor a "robust consensus of cases of persuasive authority." More recent Eighth Circuit decisions have distinguished Jones and Beck, the cases on which the district court primarily relied, in finding no Fourth Amendment violations, let alone violations of clearly established Fourth Amendment law.  See United States v. Riley, 684 F.3d 758, 764 (8th Cir.), cert. denied, 133 S. Ct. 800 (2012) (distinguishing Jones and Beck); United States v. Fuse, 391 F.3d 924, 929-30 (8th Cir. 2004), cert. denied, 544 U.S. 990 (2005) (distinguishing Beck).  Rather than "a robust consensus of cases of persuasive authority" favoring the district court's resolution of this difficult issue, our prior cases have found reasonable suspicion upholding the extension of traffic stops by officers relying on similar facts:

-- In Riley, 684 F.3d at 764, we concluded that a Missouri trooper acquired reasonable suspicion to extend a traffic stop pending arrival of a drug dog based on the traveler's undue nervousness,[3] "difficulty in answering basic questions about his itinerary," and "failure to be forthright about his criminal history relating to drugs."

-- In United States v. Lyons, 486 F.3d 367, 372 (8th Cir. 2007), we concluded that "an experienced [Nebraska trooper] trained in highway drug interdiction" acquired reasonable suspicion to summon a drug dog when she learned, during the

---

[3]"[W]e have often held that nervousness and other 'subjective perceptions' are valid factors supporting reasonable suspicion." United States v. Bloomfield, 40 F.3d 910, 919 n.10 (8th Cir. 1994) (en banc), cert. denied, 514 U.S. 1113 (1995).

traffic stop, of the traveler's "unusual travel itinerary" between Phoenix and Chicago, the traveler gave "contradictory descriptions of the friends that he had just visited," and the van contained a large amount of luggage for a short trip.

-- In Fuse, 391 F.3d at 929, we concluded that a Kansas trooper acquired reasonable suspicion to summon a drug dog from a number of factors including the driver's "unusual explanation for traveling to Kansas City," and the travelers' "continued, unusual nervousness" even after being told only a warning citation would be issued. See also United States v. Lebrun, 261 F.3d 731, 733-34 (8th Cir. 2001).

-- In November 2009, after completing a traffic stop on I-80, an experienced Nebraska trooper detained the traveler an additional twenty minutes to summon a drug dog. Though the dog alerted, no criminal charges were filed, and the motorist filed a 42 U.S.C. § 1983 damage action against the trooper and others. On March 9, 2012, the day after Trooper White stopped De La Rosa, a District of Nebraska district judge granted the trooper qualified immunity from the Fourth Amendment claim of extended detention, concluding the trooper had reasonable suspicion for further detention based on the officer's training and experience, the motorist's vague responses about his travel that "did not make sense," and the officer's perception that the motorist appeared "uncomfortable, stand-offish and would not maintain eye contact." Barton v. Heineman, 2012 WL 786347, at *6 (D. Neb. March 9, 2012), summarily aff'd, No. 13-2010 (8th Cir. Aug. 22, 2013). Inexplicably, White cited this prior decision on appeal but not to the district court. While Barton is not controlling authority, its timing and substantial factual similarity are strong evidence that, at the time Trooper White made the decision to extend his detention of De La Rosa, "existing precedent [did not] place[] the . . . constitutional question beyond debate." Mullenix, 136 S. Ct. at 308 (quotation omitted).

In the district court, Trooper White pointed to objective, particular facts and explained why these facts led him to conclude he had reasonable suspicion to briefly

extend De La Rosa's detention to determine if a drug dog would alert to the exterior of a pickup truck traveling from Arizona to Illinois on Interstate 80. To be sure, on the merits, the existence of reasonable suspicion was a close question, because the facts on which Trooper White relied, taken together, did not raise as strong a suspicion of interstate drug trafficking as in prior cases such as Riley and Lebrun. But White relied on facts presenting substantial similarities with prior cases in which reasonable suspicion of drug trafficking was found and extension of a traffic stop was upheld.

In recent years, the Supreme Court has repeatedly reversed decisions denying qualified immunity where lower courts "misunderstood the 'clearly established' analysis." White v. Pauly, 137 S. Ct. 548, 552 (2017). To avoid qualified immunity, De La Rosa must show a "a robust consensus of cases of persuasive authority." Here, there is no consensus to be found in the prior decisions that have resolved a fact-intensive Fourth Amendment issue under a governing standard that requires judges to "allow[] officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Arvizu, 534 U.S. at 273 (quotation omitted). Trooper White is therefore entitled to qualified immunity from De La Rosa's damage claims.

The Memorandum and Order of the district court dated September 18, 2015, is reversed in part. The case is remanded with directions to enter summary judgment dismissing all claims against Trooper Mark White.

_____