# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3827
_____

Charles Waters; Anita Waters

*Plaintiffs - Appellants*

v.

B. Madson; Alyssa Newbury; City of Coon Rapids

*Defendants - Appellees*

Menard, Inc.

*Defendant*

Tom Hawley; Emily Kirchner

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 15, 2018
Filed: April 11, 2019

_____

Before COLLOTON, SHEPHERD, and STRAS, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

In 2016, Charles Waters refused to allow Menards home supply store employees, pursuant to posted store policy, to search the trunk of his vehicle as he exited a Menards lumberyard in Coon Rapids, Minnesota. Mr. Waters eventually called the police, who responded to the scene. Based on this encounter, Mr. Waters and his wife Anita filed a 19-count Amended Complaint in federal district court,[1] alleging violations of both federal and state law against the City of Coon Rapids, various Coon Rapids police officers, and Menard, Inc. The defendants filed a motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), which the district court granted. Mr. and Mrs. Waters now appeal. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On March 27, 2016, Appellants visited a Menards store in Coon Rapids, Minnesota, to exchange a saw Mr. Waters had previously purchased for a new saw he had purchased online. Mr. Waters video-recorded their visit through a sunglass camera clipped to his shirt.[2] (He later posted excerpts of this video on his YouTube channel. See Dist. Ct. Dkt. 16-1.) An employee inside the store directed Appellants

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

[2]Appellants attached a highly-edited version of Mr. Waters's sunglass camera recording and the officers' squad car recordings to their Amended Complaint. Appellees produced the dashboard camera video from Officer Smith's squad car in support of their motion to dismiss. The district court determined that the videos were "necessarily embraced by the pleadings" and considered them, together with the pleadings, when ruling on Appellees' motion to dismiss. See Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012). Neither party objected to the district court's use of the videos in its determination.

to the online pickup location inside the Menards lumberyard. Mr. Waters drove into the lumberyard with Mrs. Waters in the passenger seat. While it is undisputed that Menards had posted signs at the yard's entrance and exit stating that vehicles leaving the lumberyard were subject to inspection, Appellants claim they did not see any such signs upon entry.

After Appellants arrived in the lumberyard, a Menards employee loaded the saw into their vehicle's trunk. Appellants then proceeded to the lumberyard exit, where a Menards employee requested that they open their vehicle's trunk for inspection as per the signs. Mr. Waters refused, stating that he had no legal obligation to do so. When the gate employee refused to open the exit gate and called for a manager, Mr. Waters called the police.

Coon Rapids police officers Alyssa Smith[3] and Emily Kirchner arrived in response to Mr. Waters's call. After being told by the Menards manager that posted store policy required Menards to verify Mr. Waters's purchase before Appellants could leave the lumberyard and that Mr. Waters believed he was being unlawfully detained, Officer Smith approached Appellants' vehicle and told Mr. Waters to allow the Menards employees to verify his purchase. When Mr. Waters refused, Officer Smith asked Mr. Waters for identification, which he refused to provide, stating that he was "not currently driving" and did not have to "provide ID until there [was] a reasonable suspicion of a crime." Officer Smith informed Mr. Waters that she had reasonable suspicion he had committed a crime because he would not open the trunk.

Officer Smith then asked Mr. Waters to step out of his vehicle, and Officer Kirchner explained that, because Mr. Waters was noncompliant with Menards policy, the officers reasonably suspected he had something in his vehicle's trunk that he was

---

[3]At the time of the incident, Officer Smith's name was Alyssa Newbury. For consistency with the district court opinion, we refer to her as Officer Smith.

not supposed to have. The officers again told Mr. Waters to step out of his vehicle. Mr. Waters, still video-recording, stated, "I'm being ordered out of my vehicle. I'm being placed under arrest," to which Officer Smith calmly responded, "I didn't say you were under arrest; I said you need to step out of the vehicle." When Mr. Waters asked if he was free to go, Officer Smith stated, "You are not free to go." Mr. Waters replied, "Then I'm being detained. Under what reasonable suspicion of what crime?" The officers again told Mr. Waters to get out of his car and he repeated his question, then repeatedly asked the officers for their names and badge numbers. Officer Kirchner told Mr. Waters yet again to step out of his car and, when he failed to comply, told him he could go to jail.

Mr. Waters eventually complied with orders to step out of his car. Officer Kirchner searched him for weapons and told him that the officers had "reasonable suspicion that [he] ha[d] something in the trunk," stating, "You came into a shipment yard which has a policy that you are not supposed to leave without showing the product that you have picked up, and you are not willing to do that." Officer Kirchner then handcuffed Mr. Waters, who is significantly taller than either of the female officers, and placed him in the back seat of a squad car. Officer Smith spoke to the nearby Menards employees and asked them if they had ever dealt with sovereign citizens, mentioning that Mr. Waters's behavior resembled that exhibited by sovereign citizens.[4]

---

[4]Sovereign citizens are a loosely-affiliated group who believe government in the United States operates illegitimately and outside the bounds of its jurisdiction. FBI Counterterrorism Analysis Section, Sovereign Citizens: A Growing Domestic Threat to Law Enforcement, FBI L. Enforcement Bull., Sept. 2011, at 20, 21. The FBI has labeled the sovereign citizens a domestic terrorist group. See Domestic Terrorism: The Sovereign Citizen Movement, FBI (Apr. 13, 2010), https://archives.fbi.gov/archives/news/stories/2010/april/sovereigncitizens_04131 0/domestic-terrorism-the-sovereign-citizen-movement.

-4-

Officer Smith then returned to Appellants' vehicle. When Officer Smith asked if Mr. Waters was a sovereign citizen, Mrs. Waters replied that her husband "takes it all very seriously." Officer Smith then told Mrs. Waters that Mr. Waters was creating more problems for himself. Mrs. Waters responded, "I know." Officer Smith asked Mrs. Waters to identify her husband, and Mrs. Waters did so.

While Officer Smith was speaking with Mrs. Waters, Coon Rapids Police Sergeant Brady Madson arrived on scene. Officer Smith conferred with Sergeant Madson. Officer Kirchner[5] then approached Mrs. Waters and asked, "Would you be willing to open the trunk for these gentlemen? Because that's the only thing that's holding us up here." When Mrs. Waters explained that Appellants had come into the lumberyard to pick up a saw, which a Menards employee placed in the trunk for them, Officer Kirchner stated, "It'd be doing us a huge favor if you could just bring that invoice and step out with these guys and pop the trunk for us. We'll chalk it up to [Mr. Waters] having a bad day." Mrs. Waters did as Officer Kirchner requested. A Menards employee and one of the officers looked into the trunk and verified the purchase. The officers then released Mr. Waters, issuing a trespass warning that prevented him from reentering the Coon Rapids Menards for a year.

After receiving the trespass warning but before leaving the lumberyard, Mr. Waters requested the officers' names and badge numbers. He approached Sergeant Madson to read the name and badge number off the sergeant's uniform. When Mr. Waters reached well within arm's length of Sergeant Madson, the sergeant physically turned Mr. Waters away from him and pushed him toward Appellants' vehicle. Appellants then drove out of the lumberyard. The entire encounter with the officers lasted less than twenty minutes.

---

[5]The district court's Order misidentifies Officer Kirchner as Officer Smith during this interaction.

Following the incident, Mr. Waters emailed the Coon Rapids Police Department, seeking to file a formal complaint against the officers involved. Captain Thomas Hawley initially refused to accept a written complaint through email, stating that Mr. Waters or his representative needed to communicate with the police department by telephone or in person. Although the record does not indicate that Mr. Waters, personally or through a representative, further communicated with the department other than by email, Coon Rapids Chief of Police Brad Wise reviewed Mr. Waters's complaint, determined the officers had acted lawfully, and formally closed the complaint.

Appellants filed a 19-claim Amended Complaint in the United States District Court for the District of Minnesota, alleging violations of the First, Fourth, and Fourteenth Amendments, Title II of the Americans with Disabilities Act, § 504 of the Rehabilitation Act of 1973, and the Minnesota Human Rights Act, as well as common-law claims for false imprisonment, battery, defamation, trespass, invasion of privacy, and negligence. They named Sergeant Madson, Officers Smith and Kirchner, and Captain Hawley, in their individual capacities; the City of Coon Rapids; and Menard, Inc. as defendants.

Menards filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), alleging that Menards is not a state actor and that Appellants consented to the search of their vehicle's trunk when they entered the lumberyard. The officers and the City also filed a Rule 12(b)(6) motion to dismiss, arguing that Appellants failed to plausibly allege their claims and raising the affirmative defenses of qualified, official, and absolute immunity. All defendants moved in the alternative for summary judgment.

The district court found that, with the exception of their Fourth Amendment claim for unlawful search, Appellants failed to plausibly allege any violation of their clearly-established constitutional rights, and that the officers were therefore entitled

to qualified immunity on all but one of Appellants' constitutional claims. While the district court determined that Appellants plausibly alleged a violation of their clearly-established constitutional right to be free from unlawful searches, it also determined that they failed to allege, as required for a damages claim under 42 U.S.C. § 1983, that the violation caused any compensable injury. The district court further found that Appellants failed to identify a City policy or custom that caused the alleged constitutional violations, that Appellants failed to plausibly allege their state law claims, and that Menards was not a state actor subject to § 1983 claims. The district court therefore granted the defendants' motions and dismissed all of Appellants' claims with prejudice.

Appellants subsequently settled their claims against Menard, Inc. They now appeal the district court's dismissal of their claims against the officers and the City for interference and retaliation under the First Amendment; unlawful arrest, excessive force, unlawful search, and unlawful seizure under the Fourth Amendment; and false imprisonment, battery, and defamation under Minnesota common law; and their claim against the City under Monell v. Department of Social Services, 436 U.S. 658 (1978).

II.

We review de novo a grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), accepting as true all factual allegations in the light most favorable to the nonmoving party. Aten v. Scottsdale Ins. Co., 511 F.3d 818, 820 (8th Cir. 2008). The complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[;]' . . . [it must] allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" K.T. v. Culver-Stockton Coll., 865 F.3d 1054, 1057 (8th Cir. 2017) (first alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). We need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts. Hanten v. Sch.

Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999); Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Nor need we adopt the plaintiff's version of the facts if they are "blatantly contradict[ed]" by video evidence. Boude v. City of Raymore, 855 F.3d 930, 933 (8th Cir. 2017). "We will not affirm a dismissal of a complaint for failure to state a claim unless the plaintiff can prove no set of facts that would demonstrate an entitlement to relief." Hanten, 183 F.3d at 805.

Appellants brought a multitude of constitutional claims under 42 U.S.C. § 1983. Section 1983 provides a mechanism by which aggrieved plaintiffs may sue a state actor for violation of their constitutional rights. See Foster v. Wyrick, 823 F.2d 218, 221 (8th Cir. 1987). However, state actors, such as police officers, are protected from § 1983 suits by the affirmative defense of qualified immunity. See Malley v. Briggs, 475 U.S. 335, 340 (1986); Gomez v. Toledo, 446 U.S. 635, 640 (1980) (explaining that qualified immunity is an affirmative defense). Qualified immunity shields police officers from lawsuits based on official conduct if reasonable officers in the same position could have believed their conduct was "lawful, in light of clearly established law and the information the . . . officers possessed" at the time. Anderson v. Creighton, 483 U.S. 635, 641 (1987).

Because qualified immunity protects officers from suit, not merely from liability, courts should "resolv[e] immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam). To overcome qualified immunity, a plaintiff must allege (1) a violation of his statutory or constitutional rights, and (2) that "the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232 (2009). "Qualified immunity is appropriate only if no reasonable factfinder could answer yes to both of these questions." Hess v. Ables, 714 F.3d 1048, 1051 (8th Cir. 2013) (citation omitted). Courts may analyze either of the qualified immunity prongs first. Pearson, 555 U.S. at 236.

The district court dismissed all of Appellants' constitutional claims on qualified immunity grounds except the unlawful search claim, which it dismissed for failure to state a claim. Similarly, on each of Appellants' constitutional claims, we will first determine whether qualified immunity is applicable and, if not, whether Appellants stated sufficient facts to survive a Rule 12(b)(6) motion to dismiss.

Appellants also brought a number of tort claims under Minnesota common law.[6] Police officers in Minnesota may avoid state tort actions through the application of another affirmative defense—official immunity. Elwood v. Rice County, 423 N.W.2d 671, 677 (Minn. 1988) (en banc). "The official immunity doctrine provides that 'a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong.'" Id. (quoting Susla v. State, 247 N.W.2d 907, 912 (Minn. 1976) (en banc)). While the officers in this case asserted official immunity, the district court did not analyze whether immunity barred Appellants' state tort claims. Rather, it dismissed those claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Because we dispose of each of Appellants' state law claims on other grounds, we, too, find it unnecessary to examine the application of official immunity in this case.

We now address each of the eleven claims on appeal.

---

[6]While a district court may decline to exercise supplemental jurisdiction over a state-law claim brought pendent to federal-question claims when the district court "has dismissed all claims over which it has original jurisdiction," it is not required to do so if declining jurisdiction would run contrary to "judicial economy, convenience, fairness, and comity." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997) (internal quotation marks omitted); see also 28 U.S.C. § 1367(c)(3). The district court here chose to exercise supplemental jurisdiction over Appellants' state law claims, and we may therefore review the district court's decision on those claims. See 28 U.S.C. § 1291.

III.

Appellants brought four claims for violation of their Fourth Amendment rights. The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. Mr. Waters alleges unlawful arrest and excessive force, Mrs. Waters alleges unlawful seizure, and both Mr. and Mrs. Waters allege unlawful search. We analyze each of these claims in turn.

A.

Count 3 of the Amended Complaint alleges that Officers Smith and Kirchner and Sergeant Madson violated Mr. Waters's Fourth Amendment rights by detaining or arresting him without probable cause. Police officers violate the Fourth Amendment when they conduct an arrest without a warrant or probable cause. Baribeau v. City of Minneapolis, 596 F.3d 465, 478 (8th Cir. 2010) (per curiam). However, in order to effect a temporary investigative detention, officers need only reasonable suspicion based on the totality of the circumstances. See Illinois v. Wardlow, 528 U.S. 119, 123 (2000); De La Rosa v. White, 852 F.3d 740, 744 (8th Cir. 2017). While "[r]easonable suspicion is a lower threshold than probable cause," United States v. Carpenter, 462 F.3d 981, 986 (8th Cir. 2006), it requires "at least some minimal level of objective justification." De La Rosa, 852 F.3d at 744 (internal quotation marks omitted); see also Terry v. Ohio, 392 U.S. 1, 27 (1968) (defining reasonable suspicion as something more than an "inchoate and unparticularized suspicion or 'hunch'").

In determining whether an officer possessed reasonable suspicion to conduct a temporary investigative detention, or "Terry stop," courts look only at the information the officer possessed at the time. See Terry, 392 U.S. at 21-22; see also Graham v. Connor, 490 U.S. 386, 396 (1989). "When evaluating whether reasonable suspicion for a *Terry* stop exists, 'we view the [officers'] observations as a whole,

-10-

rather than as discrete and disconnected occurrences.'" United States v. Hightower, 716 F.3d 1117, 1121 (8th Cir. 2013) (alteration in original) (quoting United States v. Poitier, 818 F.2d 679, 683 (8th Cir. 1987)). If we determine that an officer lacked reasonable suspicion and thus conducted an unlawful Terry stop, she may nonetheless be entitled to qualified immunity if she had *arguable* reasonable suspicion—that is, if a reasonable officer in the same position could have believed she had reasonable suspicion. De La Rosa, 852 F.3d at 745-46 (examining arguable reasonable suspicion under the "clearly established" prong of qualified immunity).

The district court dismissed the unlawful detention claim, finding that the officers had arguable reasonable suspicion to detain Mr. Waters and were thus entitled to qualified immunity. Appellants argue that the officers did not have reasonable suspicion or arguable reasonable suspicion to detain Mr. Waters. Alternatively, Appellants contend that the officers needed arguable probable cause because the temporary detention became a de facto arrest when the officers handcuffed Mr. Waters and detained him "in the squad car for twenty minutes." Appellant's Br. 43.

With respect to this claim, we need not discuss *arguable* reasonable suspicion because, in fact, the officers acted pursuant to reasonable suspicion in detaining Mr. Waters. The videos attached to the pleadings show that Mr. Waters refused to open his vehicle's trunk at the lumberyard exit, despite signs at the entrance and exit informing visitors that vehicles would be inspected as they left the lumberyard. The requirement was clearly part of Menards's customary protocol as customers exited the lumberyard after picking up merchandise in their vehicles. Officers Smith and Kirchner arrived at Menards in response to Mr. Waters's 911 call and Mr. Waters refused to identify himself to the officers or to allow anyone to verify his purchase. At that point, Officer Smith and Officer Kirchner had "a particularized and objective basis" to detain Mr. Waters. Thomas v. Dickel, 213 F.3d 1023, 1025 (8th Cir. 2000) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)).

Indeed, the officers told Mr. Waters at the time that he was being detained that his refusal to comply with Menards's clearly-posted policy afforded them reasonable suspicion that he had something incriminating in his vehicle's trunk. Because Officers Smith and Kirchner possessed specific, articulable facts that led them to suspect Mr. Waters might be engaged in criminal activity, see Hiibel v. Sixth Jud. Dist. Ct. of Nev., 542 U.S. 177, 186 (2004), we find that, under the totality of the circumstances, Officers Smith and Kirchner actually had reasonable suspicion to detain Mr. Waters.

Having concluded that the officers possessed reasonable suspicion to detain Mr. Waters, we must next determine whether that detention became a de facto arrest. "A Terry stop may become an arrest, requiring probable cause, if the stop lasts for an unreasonably long time or if officers use unreasonable force." United States v. Newell, 596 F.3d 876, 879 (8th Cir. 2010) (internal quotation marks omitted). While officers must use "the least intrusive means of detention and investigation . . . reasonably necessary" to conduct the stop, United States v. Navarrete-Barron, 192 F.3d 786, 790 (8th Cir. 1999), they are permitted to "take any measures that are 'reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" United States v. Sanford, 813 F.3d 708, 713 (8th Cir. 2016) (per curiam) (quoting United States v. Smith, 648 F.3d 654, 659 (8th Cir. 2011)). Finding that no unreasonable delay or unreasonable force occurred in the course of Mr. Waters's detention, we also find that the officers did not arrest Mr. Waters.

The Supreme Court has held "that a twenty-minute detention was reasonable when the police acted diligently and defendant contributed to the delay." United States v. Bloomfield, 40 F.3d 910, 917 (8th Cir. 1994) (en banc) (referencing United States v. Sharpe, 470 U.S. 675, 686-88 (1985)). Here, the video evidence shows that Appellants' "entire encounter with law enforcement lasted about 20 minutes," Waters v. Madson, Civ. No. 17-935 (PAM/SER), 2017 WL 6403099, at *2 (D. Minn. Dec.

-12-

14, 2017), that the officers worked diligently to complete their investigation, and that the encounter only lasted as long as it did because Mr. Waters was argumentative and refused to cooperate with the police investigation by failing to obey legitimate requests to identify himself and step out of his vehicle. We thus find no unreasonable delay here.

"[T]he use of handcuffs during a *Terry* stop . . . requires some reasonable belief that the suspect is armed and dangerous or that the restraints are necessary for some other legitimate purpose." El-Ghazzawy v. Berthiaume, 636 F.3d 452, 457 (8th Cir. 2011) (citation omitted). In El-Ghazzawy v. Berthiaume, we found that a police officer who used handcuffs to detain a man suspected of selling counterfeit watches to a pawn shop did not have such a reasonable belief. Id. at 459. There, the officer handcuffed the individual immediately after arriving on the scene and before conducting any investigation. Id. at 458. After actually investigating, the officer arrested El-Ghazzawy for theft by swindle; the charges were later dropped when the pawn shop determined the watches were genuine. Id. at 455-56.

In determining that the officer in El-Ghazzawy acted unreasonably, we relied on five factors: (1) the officer had no indication that El-Ghazzawy was armed and dangerous; (2) theft by swindle, the suspected crime, did not necessarily involve a weapon; (3) El-Ghazzawy exhibited no suspicious behavior and cooperated with officers throughout the incident; (4) the officer failed to conduct any investigation before handcuffing El-Ghazzawy; and (5) no exigent circumstances existed because the pawn shop already had possession of the allegedly counterfeit watches. Id. at 457-58.

By contrast, when the officers here arrived on scene, they spoke to the Menards employees and Mr. Waters to determine the situation. They did not handcuff Mr. Waters or detain him in the squad car until he disobeyed multiple commands to step out of his vehicle. Mr. Waters exhibited suspicious behavior before the officers even

-13-

arrived on the scene by failing to allow store employees to verify his purchase pursuant to a posted policy, and he continued to exhibit suspicious behavior by failing to identify himself or comply with the officers' instructions to step out of his vehicle. See United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001) (stating that an officer, in the course of a Terry stop involving a vehicle, may ask a suspect for identification, "request that the driver step out of the vehicle," and run computer searches to determine if the driver has a criminal history or outstanding warrants). In addition, the video attached to the pleadings shows that Mr. Waters is significantly larger than either Officer Smith or Officer Kirchner, which factors into the applicable circumstances. See El-Ghazzawy, 636 F.3d at 457-59 (examining officer's conduct in the context of the surrounding circumstances).

The officers did not know Mr. Waters's background and witnessed his argumentative, evasive, and uncooperative behavior. See United States v. Bailey, 417 F.3d 873, 877-78 (8th Cir. 2005) (stating that evasiveness contributes to "a reasonable and particularized suspicion that criminal activity may be afoot" (internal quotation marks omitted)). They could reasonably conclude that Mr. Waters's unpredictable behavior would continue to escalate and that handcuffing him and briefly placing him in the squad car was the least intrusive means of maintaining the status quo and protecting Mr. Waters, themselves, and bystanders while the officers investigated. See United States v. Smith, 645 F.3d 998, 1001 (8th Cir. 2011) (holding that after a suspect, initially cooperative, became agitated and refused permission when an officer asked to search his car, the officer could maintain the status quo by handcuffing the suspect and placing him in the back of a patrol car until a drug-sniffing dog arrived).

We note that Mr. Waters's unpredictability, evasiveness, argumentative demeanor, refusal to disobey legitimate officer commands, and the size difference between Mr. Waters and the officers, each viewed in isolation, likely would not justify the officers' use of restraints in this case. However, viewed as a whole, these factors could cause Officers Smith and Kirchner to reasonably believe they needed

-14-

to handcuff Mr. Waters and place him in the squad car to preserve the status quo. See id. at 1002 ("We have repeatedly held that police officers may reasonably handcuff a suspect and place him in a squad car during the course of a *Terry* stop in order to protect their safety and maintain the status quo.").

Because we view the officers' actions in the context of the totality of the circumstances, see El-Ghazzawy, 636 F.3d at 457-59, we find that it was reasonable for the officers to briefly handcuff Mr. Waters and detain him in the squad car. Officers Smith and Kirchner and Sergeant Madson are therefore entitled to qualified immunity, and we affirm the dismissal of Mr. Waters's Fourth Amendment seizure claim.

B.

Count 6 of the Amended Complaint alleges that Officers Smith and Kirchner and Sergeant Madson seized Mrs. Waters in violation of the Fourth Amendment when they threatened to arrest her if she did not provide Mr. Waters's identifying information and allow officers to search the trunk of the Waters's vehicle. The district court dismissed this claim because the officers detained Appellants pursuant to arguable reasonable suspicion.

It is well-settled law in this circuit that both a passenger and a driver are seized during a Terry stop of a vehicle. United States v. Oliver, 550 F.3d 734, 737 (8th Cir. 2008) (citing Brendlin v. California, 551 U.S. 249, 257-58 (2007); Maryland v. Wilson, 519 U.S. 408, 413-15 (1997); Pennsylvania v. Mimms, 434 U.S. 106, 111-12 (1977)). If an officer acts lawfully in detaining the driver, he acts lawfully in concurrently detaining the passenger. See Brendlin, 551 U.S. at 257-59. As we concluded above that the officers acted pursuant to reasonable suspicion in detaining Mr. Waters, the vehicle's driver, we conclude that they acted pursuant to reasonable suspicion in detaining Mrs. Waters, the passenger. The officers are entitled to

qualified immunity, and we affirm the dismissal of Mrs. Waters's Fourth Amendment seizure claim.

C.

Count 4 of the Amended Complaint asserts that Officer Smith[7] and Sergeant Madson violated Mr. Waters's Fourth Amendment rights by using excessive force against him. To state an excessive force claim under the Fourth Amendment, a plaintiff must show that an officer's use of force was "objectively unreasonable, given the facts and circumstances of the particular case, as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Chambers v. Pennycook, 641 F.3d 898, 905-06 (8th Cir. 2011) (quoting Graham, 490 U.S. at 396). "[A] claim must be based upon more than 'a de minimis use of force.'" Atkinson v. City of Mountain View, 709 F.3d 1201, 1210-11 (8th Cir. 2013) (emphasis omitted) (quoting Chambers, 641 F.3d at 906).

The district court dismissed this claim because Appellants failed to plausibly allege that Sergeant Madson's use of force was objectively unreasonable, and because Mr. Waters failed to plead the requisite resulting injury from the handcuffing. While Appellants argue on appeal that the district court improperly dismissed this claim, in their opening brief they only discuss the district court's decision as it pertains to the claim against Sergeant Madson. They have therefore waived the right to appeal the district court's dismissal of their excessive force claim against Officer Smith. See Chavero-Linares v. Smith, 782 F.3d 1038, 1040 (8th Cir. 2015).

We find that Sergeant Madson used objectively reasonable force in redirecting Mr. Waters out of his personal space. The video attached to the pleadings shows Mr.

---

[7]Mr. Waters's video shows, and Appellants concede on appeal, that Officer Kirchner, rather than Officer Smith, handcuffed Mr. Waters. See Appellant's Br. 16.

Waters approach well within arm's length of Sergeant Madson, who was leaning on the squad car. Sergeant Madson then turned Mr. Waters away from him and gave him a light push in the direction of Appellants' vehicle. We find this to be a de minimis use of force, see Cavataio v. City of Bella Villa, 570 F.3d 1015, 1018, 1020 (8th Cir. 2009) (finding that an officer used de minimis force when he kneed the compliant, handcuffed, 75-year-old arrestee in the back while placing him in a patrol car); Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003) (finding that an officer used de minimis force in wrapping his arms around a news cameraman, dragging him to the ground, and handcuffing him), especially considering that Mr. Waters does not allege any physical injuries as a result of Sergeant Madson's conduct. See Chambers, 641 F.3d at 906 ("The degree of injury is . . . relevant insofar as it tends to show the amount and type of force used.").

Because a de minimis use of force cannot form the basis for a Fourth Amendment excessive force claim, it cannot be objectively unreasonable in this context. See id. ("The appropriate inquiry is 'whether the force used to effect a particular seizure is "reasonable."' A de minimis use of force is insufficient to support a claim . . . ." (emphasis omitted) (quoting Graham, 490 U.S. at 396)). We therefore find that Sergeant Madson's use of force was reasonable under the circumstances, and we affirm the district court's dismissal of Mr. Waters's excessive force claim.

D.

Count 16 of the Amended Complaint asserts that Officers Smith and Kirchner and Sergeant Madson violated Appellants' Fourth Amendment rights by searching Appellants' vehicle without lawful authority. While the Fourth Amendment generally prohibits unreasonable searches, see Terry, 392 U.S. at 9, warrantless searches can be valid if conducted pursuant to probable cause or voluntary consent. See United States v. Matlock, 415 U.S. 164, 165-66 (1974); see also Collins v. Virginia, 138 S.

-17-

Ct. 1663, 1669 (2018) (stating that "the search of an automobile can be reasonable without a warrant" if officers have probable cause).  The state actor has the burden to prove that an individual consented to a search.  Bumper v. North Carolina, 391 U.S. 543, 547 (1968); United States v. Sanchez, 156 F.3d 875, 878 (8th Cir. 1998).

Here, the officers contend that Mrs. Waters voluntarily consented to the search of Appellants' vehicle, while Appellants argue that Mrs. Waters was coerced into consenting.  The district court concluded that Appellants alleged sufficient facts to preclude dismissal of this claim on voluntary consent grounds.  However, the district court also found that Appellants failed to allege any actual, compensable injury stemming from the officers' search of their vehicle's trunk and, thus, failed to state a claim for damages under § 1983.  A plaintiff seeking damages under § 1983 for an unreasonable search must allege (1) an unlawful search and (2) an "actual, compensable injury[,]" Heck v. Humphrey, 512 U.S. 477, 487 n.7 (1994), because "the abstract value of a constitutional right may not form the basis for § 1983 damages." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986).[8]

Appellants argue on appeal that they supported their unlawful search claim by pleading over $75,000 in emotional distress damages.  However, in their Amended

---

[8]This is the standard for compensatory and punitive damages under § 1983. See Stachura, 477 U.S. at 306-08.  The district court did not address the issue of *nominal* damages for violations of a Fourth Amendment right. See Garrett v. Clarke, 147 F.3d 745, 747 (8th Cir. 1998) ("If [plaintiff] proves [his Fourth Amendment search] claim, he is entitled to a finding of liability and nominal damages even if he cannot prove actual damages.").  To the extent that Appellants might premise their Fourth Amendment search claim on the availability of nominal damages, they have waived that issue by failing to raise it on appeal. See Miller v. Albright, 657 F.3d 733, 737-38 (8th Cir. 2011) (holding that nominal damages are not automatic in a § 1983 claim for a Fourth Amendment violation and that failure to timely request them results in waiver); Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived.").

Complaint, Appellants tied these damages directly to their false imprisonment, excessive force, battery, and unlawful seizure claims. They did not allege any damages stemming specifically from the officers' search of their vehicle's trunk. See Miller v. Albright, 657 F.3d 733, 738 (8th Cir. 2011) ("Although [plaintiff] introduced evidence of actual damages resulting from his excessive force claim, he did not introduce evidence of damages resulting from his unlawful entry claim. In that these two claims are separate and distinct, the damages resulting from the excessive force claim are not sufficient to show that [plaintiff] suffered damages as a result of the officers' unlawful entry into his home."). We therefore agree with the district court that Appellants failed to adequately plead a compensatory damages claim under § 1983 arising from the officers' search of their vehicle's trunk, and we affirm the district court's dismissal of this claim.

IV.

Appellants brought three claims under 42 U.S.C. § 1983 for violations of Mr. Waters's First Amendment rights, two of which they appeal. Count 1 of the Amended Complaint alleges that Officers Smith and Kirchner and Sergeant Madson interfered with Mr. Waters's First Amendment rights to challenge the officers' actions and to refuse to provide identification. Count 2 alleges that the three officers then retaliated against Mr. Waters for challenging their actions and asking for their names and badge numbers. Because our analysis of the interference claim incorporates our analysis of the retaliation claim, we address the retaliation claim first.

A.

In order to overcome qualified immunity and state a plausible claim for interference with his First Amendment rights under § 1983, a plaintiff must show that a state actor impeded his ability to exercise a clearly-established constitutional right. Pearson, 555 U.S. at 232. A plaintiff bringing a First Amendment retaliation claim

-19-

under § 1983 may show that officers violated his constitutional rights if "(1) he engaged in a protected activity, (2) [officers] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004).

We require a fourth element in retaliatory arrest cases: "lack of probable cause or arguable probable cause." Peterson v. Kopp, 754 F.3d 594, 602 (8th Cir. 2014); see also Reichle v. Howards, 566 U.S. 658, 664-65 (2012) ("This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause . . . ."). But see Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1955 (2018) (allowing plaintiff to maintain a First Amendment retaliatory arrest claim against a municipality without showing the absence of probable cause when the claim was premised on "a premeditated plan [by the municipality and its legislators] to intimidate him"). This is because probable cause provides sufficient grounds for an arrest, Greenman v. Jessen, 787 F.3d 882, 887-88 (8th Cir. 2015), and a plaintiff arrested pursuant to probable cause cannot show that exercising his constitutional rights was the "'but-for' cause of [his] arrest." Baribeau, 596 F.3d at 481; see also Hartman v. Moore, 547 U.S. 250, 260 (2006) ("[A]ction colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway.").

As discussed above, supra Part III.A, a temporary detention, unlike an arrest, may be premised on the less-stringent requirements of reasonable suspicion. See Wardlow, 528 U.S. at 123. Therefore, to show that exercising his constitutional rights was the "but-for" cause of a temporary detention, a plaintiff must show that the defendant officers lacked reasonable suspicion or arguable reasonable suspicion. See Allen v. Cisneros, 815 F.3d 239, 245-46 (5th Cir. 2016) (per curiam) (finding that officer who stopped, detained, and handcuffed the plaintiff was entitled to qualified

-20-

immunity on a First Amendment retaliation claim because he had reasonable suspicion to detain the plaintiff on "legal, non-retaliatory" grounds).

Appellants allege that the officers retaliated against Mr. Waters for challenging their actions by "arresting him, using excessive and deliberately painful force, handcuffing [him], . . . and banning him from Coon Rapids Menards for one year." Am. Compl. 24, Dist. Ct. Dkt. 28. The district court dismissed Appellants' retaliation claim, finding that the officers were entitled to qualified immunity because they had arguable reasonable suspicion to temporarily detain Mr. Waters. Appellants argue that the district court incorrectly required the officers to act pursuant to arguable reasonable suspicion rather than the higher standard of probable cause. Appellants' arguments are premised on their construction of Mr. Waters's detention as an arrest. However, as we have determined that Mr. Waters was never arrested, we agree with the district court that the applicable standard is reasonable suspicion, not probable cause. For the reasons stated above we find that the officers had reasonable suspicion to briefly detain Mr. Waters. We therefore find that the officers did not unconstitutionally retaliate against Mr. Waters because of his exercise of his First Amendment rights. The officers are entitled to qualified immunity, and we affirm the district court's dismissal of Appellants' First Amendment retaliation claim.

B.

Appellants further contend that the officers violated Mr. Waters's First Amendment rights to free speech, free assembly, and free association by "physically handcuffing and arresting him to prevent him from monitoring their activity and questioning their actions." Am. Compl. 23, Dist. Ct. Dkt. 28. However, as referenced in the previous section, individuals do not have a recognized "First Amendment right to be free from a retaliatory arrest that is supported by probable cause[,]" Reichle, 566 U.S. at 664-65; see also Peterson, 754 F.3d at 602, and, by extension, do not have a recognized First Amendment right to be free from investigative stops supported by

reasonable suspicion. See Allen, 815 F.3d at 245-46. Thus, for the same reasons we determined that the officers are entitled to qualified immunity on Appellants' retaliation claim, we find that they are entitled to qualified immunity on Appellants' First Amendment interference claim. We affirm the district court's dismissal of this claim.

V.

Count 7 of the Amended Complaint alleges that, under § 1983 and Monell, 436 U.S. 658, the City is vicariously liable for the officers' actions. Monell holds a municipality liable for actions of its employees or agents that violate a plaintiff's constitutional rights if the violation stemmed from an official municipal policy or custom. 436 U.S. at 694-95; Ulrich v. Pope County, 715 F.3d 1054, 1061 (8th Cir. 2013). "There must be a causal connection between the municipal policy or custom and the alleged constitutional violation in order to state a valid claim under § 1983." Ulrich, 715 F.3d at 1061 (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)).

Appellants assert the City violated their First, Fourth, and Fourteenth Amendment rights because Chief Wise—an official policymaker—ratified the officers' actions during the Menards incident when he determined the officers acted lawfully and closed Mr. Waters's formal complaint. The district court dismissed Appellants' claim, finding that they failed to establish causation. We agree with the district court that Chief Wise's after-the-fact determination did not cause the alleged violations of Appellants' constitutional rights and that Appellants, therefore, cannot premise a Monell claim on Chief Wise's actions. Because Appellants do not identify a causal link between an official municipal custom or policy and the alleged constitutional violations, they fail to state a Monell claim for municipal liability. We therefore affirm the district court's dismissal of this claim.

VI.

Count 10 of the Amended Complaint alleges that Officers Smith and Kirchner, Sergeant Madson, and the City falsely imprisoned Mr. Waters by failing to investigate whether he had shoplifted, physically restraining him without arresting him for failing to produce identification, and placing him in the back seat of a squad car in handcuffs. Count 11 asserts that the officers falsely imprisoned Mrs. Waters. Under Minnesota law, police officers falsely imprison a plaintiff if they arrest or detain him "without proper legal authority." Lundeen v. Renteria, 224 N.W.2d 132, 135 (Minn. 1974) (per curiam); see also Kleidon v. Glascock, 10 N.W.2d 394, 397 (Minn. 1943) ("False imprisonment has been defined as any imprisonment which is not legally justifiable." (internal quotation marks omitted)). As we have already found that the officers temporarily detained Appellants pursuant to reasonable suspicion, supra Part III.A, we find that they acted with proper legal authority. Appellants therefore do not state a false imprisonment claim under Minnesota law, and the district court properly dismissed these claims.

VII.

Count 12 of the Amended Complaint alleges that Sergeant Madson committed battery against Mr. Waters when he physically turned Mr. Waters away from him and pushed Mr. Waters in the direction of Appellants' vehicle. "Battery is an intentional, unpermitted offensive contact with another." Johnson v. Morris, 453 N.W.2d 31, 41 (Minn. 1990) (en banc). Under Minnesota law, "only the use of *excessive* force by a police officer will constitute a battery." Johnson v. Peterson, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984); see also Paradise v. City of Minneapolis, 297 N.W.2d 152, 155 (Minn. 1980).

The district court dismissed Appellants' battery claim because Appellants failed to plausibly allege that Sergeant Madson used objectively unreasonable force,

-23-

especially in light of the Amended Complaint's failure to allege that Mr. Waters suffered any injury. As with their Fourth Amendment excessive force claim, Appellants present no argument that Sergeant Madson employed excessive force in removing Mr. Waters from his personal space and have therefore waived the right to challenge the district court's characterization of that force as reasonable. Indeed, Appellants present no meaningful argument at all regarding this claim. See Cox v. Mortg. Elec. Registration Sys., Inc., 685 F.3d 663, 674 (8th Cir. 2012) (stating that the appellants "waived [an] issue by failing to provide a meaningful explanation of the argument and citation to relevant authority in their opening brief"). We therefore affirm the district court's dismissal of Appellants' battery claim.

## VIII.

Count 13 of the Amended Complaint alleges that Officer Smith committed defamation when she accused Mr. Waters, in front of third party bystanders, of acting like a sovereign citizen. The district court dismissed the claim, finding that Officer Smith's statement was a subjective opinion and, thus, not actionable, see Turkish Coal. of Am., Inc. v. Bruininks, 678 F.3d 617, 625 (8th Cir. 2012) (citing Geraci v. Eckankar, 526 N.W.2d 391, 397 (Minn. Ct. App. 1995)), and that, alternatively, if Officer Smith's statement was actionable, she and the City were shielded by absolute immunity. On appeal, Appellants do not challenge the district court's determination that Officer Smith's statement was not actionable. They have therefore waived argument on that dispositive issue. See Cox, 685 F.3d at 674. We affirm the district court's dismissal of Appellants' defamation claim.

## IX.

The judgment of the district court is affirmed in full.

_____

-24-